NOT FOR PUBLICATION (Doc. No. 46)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| WILLIAM J EINHORN, ADMINISTRATOR OF THE TEAMSTERS PENSION TRUST FUND OF PHILADELPHIA AND VICINITY | : | |
| Plaintiff, | : | Civil No. 13-2021 (RBK) |
| v. | : | **OPINION** |
| HIGHWAY SAFTEY SYSTEMS, INC. | : | |
| Defendant. | : | |

**KUGLER,** United States District Judge:

This matter comes before the Court on the Motion for Default Judgment (Doc. 46) of Plaintiff William J. Einhorn, Administrator of the Teamsters Pension Trust Fund of Philadelphia and Vicinity ("Plaintiff" or "the Fund") against Defendant Highway Safety Systems, Inc. ("Defendant") pursuant to Federal Rule of Civil Procedure 55(b). Plaintiff is requesting monetary damages for Defendant's complete withdrawal from the Fund. For the reasons set forth herein, Plaintiff's motion will be granted.

I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Plaintiff seeks a default judgment for Defendant's withdrawal liability, which arises under Section 4201 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §

---

[1] The following facts are established by Plaintiff's original Complaint, (Pl.'s Compl. ("Compl."), Doc. 1) and the Declaration of Plaintiff's counsel Matthew D. Areman, Esq. attached to Plaintiff's Motion for Default Judgment, (Areman Decl., Doc. 46). As a consequence of the Clerk of Court's entry of default judgment, the Court accepts as true the facts alleged in the Complaint, save for those relating to damages. United States v. Pinsky, No. 10-2280, 2011 WL 1326031 at *2 (D.N.J. Mar. 31, 2011) (citing Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990)).

1

1002 et seq. (Compl. ¶ 1.) The Fund is a multiemployer pension plan established for the purpose of providing retirement and related benefits to eligible participants and beneficiaries, (Id. ¶ 6), and William J. Einhorn is the Administrator of the Fund. (Id. ¶ 7.) Defendant participated in and contributed to the Fund pursuant to the terms of a collective bargaining agreement between itself and the International Brotherhood of Teamsters, Local No. 676. (Id. ¶ 12.) As a participant, Defendant was bound by the terms of the plan. (Id. ¶ 13.)

On or around September 21, 2012, the Fund determined that Defendant had made a complete withdrawal from the Fund during the 2012 Plan Year. (Id. ¶ 14.) By way of letter dated that same day, the Fund demanded $563,913.67 for Defendant's withdrawal liability, payable in forty-three quarterly installments of $18,453.32 to commence on November 20, 2012 and a final quarterly payment of $15,954.54. (Compl. ¶ 15; Letter to Def. dated 9/21/12 ("9/21/12 Letter"), Doc. 1, Ex. B.) Attached to the letter was a schedule summarizing the calculation of Defendant's liabilities. (9/21/12 Letter.) On November 21, 2012, having not received payment, the Fund sent another letter demanding payment within sixty days. (Compl. ¶ 16; Letter to Def. dated 11/21/12, Doc. 1, Ex. C.) Defendant never contested or requested review of Plaintiff's assessment, nor did it invoke the arbitration procedures available to it pursuant to 29 U.S.C. § 1401. (Compl. ¶ 17.) After Defendant failed to make any payment within sixty days, the Fund notified Defendant that it was declaring default. (Id. ¶ 19; Letter to Def. dated 1/29/13, Ex. D., Doc. 1-3.)

Plaintiff filed a Complaint with this Court on April 1, 2013 seeking to recover Defendant's withdrawal liability in the amount of $563,913.67, plus interest, liquidated damages, and attorney's fees and costs. (Doc. 1.) Defendant was served with copies of the summons and Complaint on April 15, 2013. (Doc. 4.) After begin given multiple extensions, (see Docs. 5–

14), Defendant then filed its Answer on August 8, 2013.  (Doc. 15.)  The case proceeded to discovery, but on April 1, 2014, discovery deadlines were adjourned after Defendant's counsel moved to withdraw.  (Areman Decl. ¶ 9, Doc. 46.)  In May 2014, Defendant secured new counsel, who, in similar fashion, sought to withdraw as counsel in November 2014.  (Id. ¶ 10–11.)  After a hearing, the Court granted counsel's motion on February 6, 2015 and ordered Defendant to obtain new counsel within thirty days.  (Id. ¶ 12.)  The Court's Order warned that if Defendant "fail[ed] to comply with this directive, Plaintiff may file a motion seeking default judgment . . . ."  (Id.; Order dated Feb. 6, 2015, Doc. 44.)

On April 29, 2015, Plaintiff filed the instant motion seeking default judgment.  (Doc. 46.)  Plaintiff's counsel certifies that the allotted thirty-day period in which Defendant was to obtain new counsel has lapsed, and Defendant has failed to secure counsel.  (Areman Decl. ¶ 13, Doc. 46.)  Plaintiff thus requests that the Court enter a default judgment against Defendant.  Defendant has not opposed Plaintiff's motion.

## II.    DISCUSSION AND ANALYSIS

Federal Rule of Civil Procedure 55(b)(2) allows the Court, upon a Plaintiff's motion, to enter default judgment against a defendant that has failed to plead or otherwise defend a claim for affirmative relief.  While the decision to enter default judgment is left principally to the discretion of the district court, there is a well-established preference in this Circuit that cases be decided on the merits rather than by default whenever practicable.  Hritz v. Woma Corp., 732 F.2d 1178, 1180–81 (3d Cir. 1984).  Consequently, the Court must address a number of issues before deciding whether a default judgment is warranted in the instant case.  If it finds default judgment to be appropriate, the Court will then consider the question of damages.

### A. Appropriateness of Default Judgment

#### 1) The Court's Jurisdiction

First, the Court must determine whether it has both subject matter jurisdiction over Plaintiff's cause of action and personal jurisdiction over Defendant. U.S. Life Ins. Co. in City of N.Y. v. Romash, No. 09-3510, 2010 WL 2400163 at *1 (D.N.J. June 9, 2010). Here, the Court has federal question jurisdiction over Plaintiff's claim for withdrawal liability because the claim arises a under federal statute. See 29 U.S.C. § 1451(c) (providing the U.S. district courts with jurisdiction over civil actions brought to enforce applicable ERISA obligations).

The Court also has personal jurisdiction over Defendant because Defendant was physically located in the State of New Jersey at the time it was served process with this matter. See Fed. R. Civ. P. 4(k)(1)(A); N.J. Ct. R. 4:4-4(a) ("The primary method of obtaining in personam jurisdiction over a defendant in this State is by causing the summons and complaint to be personally served within this State . . . .").

#### 2) Entry of Default

Second, the Court must ensure that the entry of default under Federal Rule of Civil Procedure 55(a) was proper. Rule 55(a) directs the Clerk of Court to enter a party's default when the party "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Here, Defendant failed to obtain counsel within the thirty-day period allotted by this Court in its Order dated February 6, 2015, which specifically warned Defendant that Plaintiff would be entitled to seek default judgment in the event Defendant failed to comply. (Doc. 44.) Thereafter, Defendant failed to obtain new counsel. Plaintiff's counsel attested to these facts in his certification attached to

Plaintiff's request for default. (Areman Decl. ¶¶ 11, Doc. 45.) Accordingly, the Clerk's entry of default under Rule 55(a) was appropriate.

### 3) Plaintiff's Cause of Action

Third, the Court must determine whether Plaintiff's Complaint states a plausible cause of action against Defendant. In conducting this inquiry, the Court accepts as true a plaintiff's well-pleaded factual allegations, save those relating to the amount of damages, while disregarding its legal conclusions. See Directv, Inc. v. Asher, No. 03-1969, 2006 WL 680533 at *1 (D.N.J. Mar. 14, 2006) (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688, at 63 (3d ed. 1998)).

As indicated *supra*, Plaintiff's cause of action is for withdrawal liability pursuant to 29 U.S.C. §§ 1381 and 1399. Section 1381(a) provides that an employer is liable if the employer "withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal." 29 U.S.C. § 1381(a). The plan sponsor or trustee determines the amount of the employer's withdrawal liability. See § 1381(b); see also § 1391 (establishing the methods for computing liability). As soon as practicable after an employer effectuates its withdrawal, the plan sponsor must notify the employer as to the amount of liability and a payment schedule, demanding payment in accordance therewith. 29 U.S.C. § 1399(b).

The Court finds that Plaintiff stated a valid claim for withdrawal liability against Defendant under 29 U.S.C. §§ 1381 and 1399. Plaintiff's alleges in its Complaint that on September 21, 2012, Defendant made a complete withdrawal from the Fund during the 2012 plan year and that as of Plaintiff's filing its Complaint, Defendant had made no withdrawal liability payments. (Compl. ¶¶ 14, 20, 21.) Plaintiff also asserts that it complied with all notice

requirements provided for in § 1399. (Id. ¶¶ 15, 16, 19.) The Court finds these allegations are enough to state a claim under 29 U.S.C. §§ 1381 and 1399.

### 4) Emcasco Factors

Lastly, the Court must consider the so-called Emcasco factors when determining whether to enter default judgment. The Court considers (1) whether the defaulting party has a meritorious defense, (2) the prejudice suffered by the plaintiff seeking default, and (3) the defaulting party's culpability in bringing about default. Bridges Fin. Group, Inc. v. Beech Hill Co. No. 09-2686, 2011 WL 1485435 at *3 (D.N.J. Apr.18, 2011) (citing Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008)). Here, all three factors favor granting default judgment.

First, there is no indication that Defendant has a cognizable defense to Plaintiff's withdrawal liability claim. Upon receiving notice of its withdrawal liability and payment schedule, an employer has ninety days to ask the plan sponsor to conduct a "review" of the computed liability. 29 U.S.C. § 1399(b)(2)(A)-(B). If a dispute remains after a "reasonable review," either party may institute the arbitration proceedings. 29 U.S.C. § 1401(a). An employer's failure to invoke the arbitration procedure constitutes a waiver of its right to challenge the existence or amount of its withdrawal liability. See e,g., Teamsters Local No. 945 Pension Fund v. Garden State Hauling, LLC, No. CIV. 09-2938 (WJM), 2009 WL 4730199 at *2 (D.N.J. Dec. 4, 2009) ("If the employer fails to initiate arbitration proceedings, the withdrawal liability assessment becomes due and owing and the trustees may commence an action to collect the unpaid withdrawal liability from the employer."); Local 478 Trucking and Allied Indus. Pension Fund v. Jayne, 778 F. Supp. 1289, 1313 (D.N.J. 1991) (explaining that arbitration is an integral part of the process). Here, Defendant failed to request a review of the Fund's

withdrawal liability assessment or invoke the mandatory arbitration procedure provided for in ERISA. (Compl. ¶ 17.) Indeed, such a failure is "tantamount to Defendant's abdicating its right to challenge its withdrawal liability assessments in this Court." Einhorn v. Klayman Produce Co., Inc., No. 13-1720, 2013 WL 6632521 at *4 (E.D. Pa. Dec. 17, 2013) (quoting Dilner v. Sheesley Supply Co., Inc., No. 10–122, 2012 WL 5818315 at *5 (W.D. Pa. Nov. 15, 2012)). As such, the Court sees no indication that Defendant has a meritorious defense.

Next, it is clear that Plaintiff is prejudiced by Defendant's failure to obtain counsel within the time provided by the Court. Because the Defendant is a corporation, Plaintiff can proceed against it only if Defendant is represented by counsel. See Simbraw, Inc. v. United States, 367 F.2d 373, 374 (3d Cir. 1966). Plaintiff is therefore prejudiced because it has no alternative means of vindicating its claim for withdrawal liability. Directv, Inc. v. Asher, No. CIV.A. 03-1969, 2006 WL 680533 at *2 (D.N.J. Mar. 14, 2006).

Last, Defendant's failure to comply with the Court's Order to obtain counsel permits the court to draw an inference of culpability. See Prudential Ins. Co. of Am. v. Pinto, No. CIV.A. 07-4166 (GEB), 2010 WL 1752504 at *3 (D.N.J. Apr. 28, 2010) (finding culpability where defendants failed to respond to and comply with the Magistrate Judge's orders). Thus, the Emcasco factors weigh in favor of entering default judgment.

5) **Conclusion**

In light of the foregoing analysis, the Court finds that Plaintiff is entitled to Default Judgment against Defendant.

B. **Damages**

An employer's failure to make a withdrawal liability payment shall be "treated in the same manner as a delinquent contribution under 29 U.S.C. § 1145." Trucking Emps. of N.

7

Jersey Welfare Fund, Inc. v. Bellezza Co., Inc., 57 F. App'x 972, 975 (3d Cir. 2003); Einhorn v. DiMedio Lime Co., No. 13-3634 (RBK/JS), 2014 WL 5816695 at *5 (D.N.J. Nov. 10, 2014).  In an action to enforce a delinquent contribution under § 1145, §1132(g)(2) is applicable, see Penn Elastic Co. v. United Retail & Wholesale Emps. Union, Local 115 Joint Pension Fund, 792 F.2d 45, 47–48 (3d Cir. 1986), and where judgment is in favor of the fund, it provides for a mandatory award of the unpaid contributions, interest, liquidated damages, and reasonable attorney's fees and costs.  29 U.S.C. § 1132(g)(2);[2] Anker Energy Corp. v. Consol. Coal Co., 177 F.3d 161, 179 n.9 (3d Cir. 1999).

      The Court finds that Plaintiff is entitled to $563,913.67 in withdrawal liability.  Defendant failed to challenge Plaintiff's withdrawal liability assessment and failed to initiate the mandatory arbitration procedures.  As such, Defendant's withdrawal liability, as determined by Plaintiff's assessment, became "due and owing."  See e,g., Teamsters Local No. 945 Pension Fund, 2009 WL 4730199 at *2 ("If the employer fails to initiate arbitration proceedings, the withdrawal liability assessment becomes due and owing . . . .").

      Plaintiff also seeks attorney's fees of $12,240.00, which represents 40.80 hours of work at an hourly rate of $300.00.  (Areman Decl. ¶¶ 17-18, Doc. 46.)  Plaintiff also incurred costs of $655.12 for a filing fee, service of process, photocopies and postage, and a teleconference charge.  (Id. ¶ 19.)  Finding these fees and costs reasonable, the Court awards them Plaintiff.

---

[2] Section 1132(g)(2) provides for the following damages:
    (A) the unpaid contributions,
    (B) interest on the unpaid contributions,
    (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or
    (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
    (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
    (E) such other legal or equitable relief as the court deems appropriate.
29 U.S.C. § 1132(g)(2).

Plaintiff also seeks interest on the withdrawal liability and liquidated damages set by the Plan. Plaintiff states that because the Plan does not provide for an interest rate, it should recover interest at the rate prescribed by 26 U.S.C. § 6621,[3] which Plaintiff asserts is 3.43 percent. However, Plaintiff has not demonstrated beyond a simple statement in counsel's Declaration, (id. ¶ 22), that the interest rate of 3.43 percent is the statutory rate under § 6621. Therefore, the Court is not currently in a position to award Plaintiff the interest it requests pursuant to §1132(g)(2)(B). Section 1132(g)(2)(C) also entitles Plaintiff to an amount equal to the greater of either (i) interest on the unpaid contributions or (ii) liquidated damages. 29 U.S.C. § 1132(g)(2)(C)(i)–(ii). Without first determining the applicable interest rate, the Court is not in a position to award interest or liquidated damages pursuant to this provision.

Accordingly, the Court will reserve final judgment on the amount of interest and liquidated damages to be awarded until Plaintiff submits an affidavit establishing the applicable interest rate under 26 U.S.C. § 6621 and calculating damages thereunder.

### III.     CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment against Defendant Highway Safety Systems, Inc. is granted and judgment shall be entered against Defendant in the amount of $576,808.79.

Dated: 9/22/2015                                                              s/Robert B. Kugler
                                                                              ROBERT B. KUGLER
                                                                              United States District Judge

---

[3] 29 U.S.C. § 1132(g) provides that "[f]or purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26."